Wardlaw, J.,
dissenting. I am one of the majority of the Law Court of Appeals whose views in this case have been overruled by the Court of Errors, and with much deference I venture hastily to set forth those views.
It appears to me that however we may turn the matter, the question of the case at last comes to this: — Has a commissioner, who sells a slave under 'proceedings for partition, by which simply the power to sell is given to him, the right to make a warranty of soundness, which will be binding upon the parties for whose benefit he sells ? He cannot, without special authority, make an express warranty, which will bind any person besides himself. This, I believe, is admitted. ■ I think it follows that no warranty will be'implied by the law, in his contract of sale: for that only is implied which circumstances indicate where the parties are silent, and which the parties are competent to express.
Distinctions have, however, been taken between failure of consideration and breach of implied warranty, and between an implied agreement and a condition annexed by the law.
There is plainly a difference between a set-off and a failure of consideration, (Evans & Yongue, 8 Rich. 113,) or as it maybe otherwise expressed, between an independent cross demand *524 and a defence growing out of the contract sued on; between damages arising from the plaintiff’s breach of another contract, and a diminution in the value of an article sold, which comes from a vendor’s — plaintiff’s violation of some condition on his part which was contained in the contract of sale. But when, in reference to defences for unsoundness where there is no express -warranty, we say that th^re is a distinction between the breach of implied warranty and the failure of consideration, we distinguish only between two modes of expressing the same thing. To ascertain a failure of consideration, we must first fix what the consideration was. If it was an article sold under the rule caveat emptor, then from a latent defect, without fraud or affirmation, no failure ensues. If it was an article sold under the rule ordinarily applicable in this State to the sales of chattels, then the failure caused by such a defect consists in the breach of the implied warranty, the breach of the condition annexed by law to the contract, on the non-performance of the contract on the part of the vendor, as by one or another of these phrases we may choose to express a violation of the rule. The question always involved is, what was the contract ? and the defence grounded on plaintiff’s breach of the contract remains the samé, however its name may be varied.
By the common law, when a manufacturer supplies his manufactured goods for a particular purpose there is an implied warranty that the goods shall be fit for the purpose; when any person, perhaps, sells a commodity for a particular purpose, he is understood to warrant it to be reasonably fit for the purpose: goods sold by sample are impliedly warranted to be equal in quality to the sample: where the purchaser had no opportunity for inspection, goods sold are by implication warranted to be merchantable; all provisions sold are impliedly warranted to be wholesome ; affirmations by the seller, on the faith of which the purchaser ’buys, are regarded as warranties ; great latitude of construction is indulged in establishing express warranties ; and for all deceit there is accountability. (Chitty on Contracts, *525 357, and note 1, 4th Amer. Ed.) Subject to these qualifications and exceptions, the rule caveat emptor applies to the sales of chattels. It is specially applicable to sales of the products of nature, contradistinguished from manufactured goods, because as to the former latent defects unknown to both parties are more likely to exist. A learned civilian says, that the rule was borrowed from the civil law, by which it was applied only to the sales of slaves, horses and cattle. (Duponceau on Jurisdic. 118.)
The other rule, which prevails in this State, and for which also reference is made to the civil law, is usually expressed in this form, “a sound price requires a sound commodity.” It is most frequently brought under the notice of our courts, in its application to the sales of slaves and horses. Some have thought that it is better expressed In this form, “ the article sold must conform to its appearance ;” but by whatever words we may attempt to condense its general purpose, the rule has been, by the decisions of our courts, explained, qualified, extended, restricted, assailed and defended, so that it is familiarly known. The usual name given to the result of its application to a contract is, the implied warranty of soundness ; but if we should call the same result, an equitable condition of the sale, we would not alter its nature nor enlarge its meaning in effect. Where it applies, it is a condition or tacit understanding, which the law makes part of the contract. If there has been without fraud, a refusal of the seller to warrant, the condition does not attach or, as we usually phrase it, the implication of warranty does not arise. (1 Speer, 319.) The implied warranty, or equitable condition, is then like the many other agreements which the law implies where the parties are silent, and circumstances are taken to denote their understanding of that which justice or policy requires and which they do not contradict or exclude.
According to the plain expressions used in a sale, which a Commissioner in Equity makes for partition,'he sells the in *526 terest of the person whose property is to be partitioned, in the article which he exhibits; he sells as a public officer under a power contained in a special order of Court, and he makes neither express warranty nor affirmation concerning the article. No high equity requires the application of a rule which may guard against fraudulent concealments on his par.t, for he knows of the article no more than the purchaser does, he has no better opportunity of inspecting it, and feels much less interest concerning the price. The want of power on his part forbids that any agreement should be imputed to him beyond his expressions, which shall affect himself personally. But it is supposed that he is the agent of the parties in the Equity cause, and that the same rule should apply to a sale made through his intervention that,would apply to one made by themselves directly. That-Courts and the machinery of justice maybe made the instruments of fraud, and, that fraud thus perpetrated should be the more abhorred for the very sanctity of the means that it abuses, may be admitted, but the case we are considering is not one of fraud, but of unsoundnass unknown to all parties. If, in reference to cases like this, the Commissioner can in his sale be properly called the agent of the parties in Equity, at all, he is in such sale acting under a power delegated by the Court, — a power without interest, and often affecting the rights of persons who are not mi juris, — he is responsible only to the Court, and receives directions from no other quarter. If the parties all being competent, should positively direct him to, refuse to warrant, would any directions from them, not contained in the proceedings had in their cause, alter the contract as it is written in those proceedings ? If it would, and the Commissioner should in their absence neglect their directions, would he become personally liable to them for permitting a liability to fall upon them which they had not intended to assume ? In the absence of all directions, written or unwritten, about warranty, the mode of salé adopted by the parties, the terms *527 expressed and the circumstances attending it, may well be considered equivalent to a refusal to warrant, and the modification of the general rule which such refusal ordinarily produces, should here prevail.
If we look to policy, symmetry, and other intrinsic considerations, for an exposition of the contract made by the Commissioner in Equity in his sale of a chattel, the propriety of excluding the implication of warranty will be further established.
A purchaser who has paid his money could not, for a defect subsequently discovered, recover back from the Commissioner. If, without allegation of fraud or affirmation, he should be held entitled to recover back from the parties who had received the money, serious mischiefs in the disturbance of settled accounts, and serious difficulties in the pursuit of scattered distributees, including femes covert, and infants, might be expected to ensue. But, if there is no recovery back, (which I understand to be the better opinion,) then the rule for Commissioners’ sales such as the one in question, is what we have called the equitable, condition, so modified that it may avail for defence, but not for the support of an action. In the same sale made partly for cash, and partly on credit, the condition may be applicable to one part and not to the other. Land and negroes sold under the same order, to the same purchaser, and paid for by the same bond, will fall under rules so widely different, that the purchaser must pay for the land, although he should be evicted from it by a paramount title, but shall have an abatement for the' unsoundness of a negro, if he shall have discovered it soon enough.
In sales made by a sheriff under execution, it is acknowledged that the rule is caveat emptor. Policy and convenience require this, but a sufficient technical answer to any attempt that might be made to extend to these sales the equitable condition above-mentioned, is that the sheriff, under the power which he exercises in such sales, can make no warranty, express or implied, binding on other persons. Sometimes a Commissioner sells *528 under proceedings for payment of debts and distribution of the residue. The same reasons which give law to sheriffs’ sales would apply to the Commissioners’, so far as debts are concerned ; and under the decision now made, it may hereafter become necessary in such cases to inquire whether a portion of chattels sold under the same order, is subject to one rule and a portion to another; and possibly, if the equitable condition should he held to apply only to the extent of the residue, an adjustment of accounts in Equity may be required before it can be decided at law whether a defence upon a bond taken from a purchaser can be' sustained, — that 'is, whether parties, ignorant at the time of their contract of what might be the result of an accounting, did or did not impliedly adopt a condition, whose applicability depended upon such result.
It is supposed that Commissioners’ sales would be chilled, if it was understood that the purchaser should take care of himself. This might be so, to such extent as the application of the equitable condition, modified so as to suit only for defence, serves to enhance prices. But, if all doubt and mischief could not be removed by the order of the Court which directs the sale, any loss to parties, that would thus ensue, would be more than compensated by the security which they would have acquired against the injustice which, upon the falling of prices or ill-luck attending an article sold, is often administered in Courts under the fqrm of applying a rule of abstract equity or a high morality.
On the other hand, it has been urged that when a successfuldefence has been made by a purchaser, a distributee to whom that purchaser’s bond may have been assigned, may for his share receive only a fruitless right of resort to distant or irresponsible co-distributees.
It seems to me that the greater simplicity and certainty of the rule which excludes the implication of warranty at Commissioners’ sales, much outweighs any advantages, which the superior equity of any other rule may be supposed to afford; and I think that the cases hitherto decided in this.State, if they do *529 not require us to adopt the former rule, at least leave us at liberty to do so.
In general, no warranty or implication extends to sales made by public officers. Commissioner vs. Thompson, 4 McC. 434.
In an action by a sheriff upon a bond which was given for land sold under proceedings for partition had in the Court of Common Pleas, a defence for deficiency of quantity was allowed; but there the sale was made by the acre according to a plat which the parties exhibited in their proceedings, and the Sheriff exhibited at the sale. Barkley vs. Barkley, Harp. 441. The case stands on the ground of representation made under a special power delegated by the parties.
To sales by executors and administrators, the implied war-' ranty of soundness extends, because executors and administrators are legal owners of the chattels sold by them. Eastland vs. Longshore, 1 N. & McC. 194.
In the sum. pro. case, concerning a note given for a horse that had been sold as an estray, (Commissioners of Roads vs. Macon, et al., 2 Brev. 105,) the report contains loose expressions about deceit, but there the magistrate who sold was, under the estray Act, the agent for the owner or for the Commissioners of Roads, as the event might be, and the sale was therefore in effect the same as a sale by the owner.
The opinions in Evans vs. Dendy, 2 Speer, 9, and Rogers vs. Horn, 6 Rich. 361, seem to me to have been designed to establish principles, from which I fear this case will be a departure more likely to increase litigation than to promote justice. Those cases it is true related to land, and in them the contracts were expressed in deeds; but I do not see the propriety of perplexing our law by unnecessary distinctions,— adding to the distinctions, which already exist between real and personal estate, a further distinction concerning the admissibility of these equitable defences against bonds given to Commissioners in Equity. The hardship to the purchaser may be *530 as great, the chilling of the biddings is likely to be- greater, in reference to land than to slaves, inasmuch as a tract of land is usually more valuable than a slave, and a defect in a land title may be more inscrutable than a defect in a negro’s health.
Having thus set forth, very inadequately, the reasons why I would have preferred a contrary decision, my duty is now to conform, as I cheerfully will, to the decision which has been made.
Grover, J., concurred.